*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0214P (6th Cir.)
File Name: 01a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*

No. 99-2159

JAMES G. ROBERTSON,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-81209—Gerald E. Rosen, District Judge.

Submitted: April 27, 2001

Decided and Filed: July 10, 2001

Before: SILER and MOORE, Circuit Judges; STAGG,
District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Richard J. Amberg, Waterford, Michigan, for
Appellant. Kathleen Moro Nesi, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Tom Stagg, United States District Judge for the
Western District of Louisiana, sitting by designation.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant James Robertson ("Robertson" or "defendant") argues on appeal that the seventy-day period in which the government was required to bring him to trial was exceeded in this case, thus violating his statutory rights under the Speedy Trial Act, 18 U.S.C. § 3161. Robertson further appeals several aspects of his sentence, claiming that the district court erred in refusing to grant him an additional offense level reduction for "super acceptance" of responsibility pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(b)(1), and that the court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1.

Although we **AFFIRM** the district court's decision that the Speedy Trial Act was not violated in this case, we **VACATE** Robertson's sentence and **REMAND** for new sentencing due to error in the application of U.S.S.G. §§ 3E1.1(b) and 4B1.1.

## I. BACKGROUND

On October 10, 1997, James Robertson entered a Huntington Bank branch in Hamtramck, Michigan. Robertson approached the counter and handed a bank teller a demand note stating:  "'I want $3000,00 [sic] in on [sic] hundred bills do as I say and do it now or I will shoot  This is no joke  Put it in an envelope.'"  Joint Appendix ("J.A.") at 13 (FBI Agent Townley Aff.).  The teller, after beginning to count out the money, pushed the hold-up alarm and ran away from her window screaming.  Robertson then ran out of the bank, followed by two female bank employees.  A man driving a truck witnessed the employees following Robertson and then aided the employees in apprehending Robertson. The man held Robertson until the Hamtramck Police arrived.

Later that same day, the FBI arrived at the Hamtramck Police Department and took custody of Robertson. During an interview with two FBI field agents, Robertson waived his Miranda rights and confessed to attempting to rob the bank in question. Robertson also drafted a written confession concerning the attempted bank robbery.

After a one-count information charging Robertson with attempted bank robbery was filed, Robertson agreed to plead guilty pursuant to a plea agreement that capped his sentence at forty months' imprisonment. At the plea hearing in February 1998, the district court accepted Robertson's guilty plea and took the plea agreement under advisement.

In the Presentence Investigation Report ("PSR"), the probation officer calculated a sentencing range substantially different from that agreed to in the plea bargain. Based on Robertson's prior felony convictions, the probation officer determined that Robertson should be sentenced as a career offender, calculating a total offense level of 29 and a criminal history category of VI. The guideline sentencing range based on these calculations was 151 to 188 months. U.S.S.G. Sentencing Table. Based on the significant difference between the recommended sentencing range in the plea agreement and the PSR, the district court rejected the plea agreement, stating that it could "find no possible justification for agreeing to sentence this defendant to forty months, given this defendant's lengthy criminal history and the contempt that he has shown for the criminal justice system." J.A. at 168 (Sentencing Hr'g I). At that point, Robertson expressed his desire to go to trial rather than enter into a revised plea agreement. Following the withdrawal of his guilty plea, a revised PSR was written in which Robertson received an offense level reduction of two points for acceptance of responsibility, rather than the three-level reduction given originally, because the government was now forced to prepare for trial. This altered his guideline imprisonment range to 168 to 210 months.

After withdrawing his original guilty plea, Robertson filed a series of motions with the district court, including a motion to suppress his confession, several motions to adjourn trial, a motion to dismiss for failure properly to waive indictment, and several motions requesting that the district judge recuse himself from the proceedings. The district court denied the defendant's motions.

On September 7, 1999, the first scheduled day of trial, Robertson entered into a conditional plea agreement. The agreement stated that Robertson could raise on appeal any of the claims he had argued in his pretrial motions; that he would be given a two-point reduction for acceptance of responsibility; that he would have the opportunity to argue for a third point reduction at his sentencing hearing; and that he would be sentenced to no more than the mid-point of the applicable guideline imprisonment range. At the sentencing hearing on October 4, 1999, the district court accepted Robertson's plea agreement. The court denied Robertson the additional offense level reduction for "super-acceptance" of responsibility, however.

On appeal, Robertson now argues 1) that the district court erred in refusing to grant him an additional offense level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b)(1); 2) that the court erred in sentencing him as a career offender pursuant to U.S.S.G. § 4B1.1; and 3) that the court erred in holding that the seventy-day time period in which the government had to bring him to trial pursuant to the Speedy Trial Act was not exceeded in this case.

## II. ANALYSIS

### A. Speedy Trial Act

Robertson argues that the district court erred in determining that his statutory right to a speedy trial under 18 U.S.C. § 3161 was not violated in this case. The Speedy Trial "Act requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried seventy days after his

If none of Robertson's convictions in 1974 or earlier can count towards sentencing, then Robertson would have a total of twelve criminal history points (category V classification) and only one prior felony constituting a crime of violence, thus precluding category VI classification. It is important to note, however, that if Robertson was serving time on or after October 10, 1982 on at least one of the four felony convictions constituting crimes of violence between 1966 and 1974, he does meet the requirements of § 4B1.1 for sentencing as a career offender, and his criminal history point total would exceed thirteen independent of § 4B1.1 as well, thus placing him into criminal history category VI.

Questions concerning the timeliness of Robertson's felony convictions still remain in light of the district court's error with respect to the requisite timeliness of prior felony convictions under § 4B1.1. With these timeliness considerations in mind, we vacate defendant's sentence as a career offender and remand to the district court for resentencing. Robertson will now have the opportunity to present evidence and argument concerning the issue of possible staleness of the prior convictions under the standards we have announced above.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision that the Speedy Trial Act was not violated in this case, **VACATE** Robertson's sentence, and **REMAND** for resentencing consistent with this opinion regarding defendant's qualification for an additional one-point offense level reduction for acceptance of responsibility under § 3E1.1(b), and whether any of defendant's prior felony convictions satisfy § 4A1.2(e)(1)'s timeliness requirement so as to qualify Robertson for sentencing under criminal history category VI.

terminated in December 1983.[6] If this is accurate, then these crimes could be considered for purposes of § 4B1.1, and criminal history points could be assigned to these convictions as well. Due to the district court's error in holding that prior felony convictions could not be stale for purposes of defendant's career offender classification, however, the defense was given no meaningful chance, despite its objections,[7] to challenge the probation officer's determination that Robertson's prior felony convictions were timely. The district court's holding that the timeliness of past convictions was irrelevant effectively prevented the defense from further questioning the Michigan Department of Corrections's records tracking Robertson's complicated criminal history, records which state that the defendant's five separate convictions between 1966 and 1974 all terminated in the same month, with four of the five sentences terminating on the same day.[8]

---

[6] The records, according to the probation officer, state that sentences for three of the four escapes for which he was convicted, as well as the attempted robbery, all terminated on December 29, 1983. Interestingly, the PSR indicates that defendant's sentence for his 1974 escape terminated ten days prior to his sentences for three previous escapes.

[7] In addition to the objection made by defense counsel at the initial sentencing hearing, the defendant specifically objected to the consideration of several prior convictions on timeliness grounds in his list of objections to the presentence report.

[8] Further complicating defendant's criminal history are the numerous times he was granted parole and then later returned to custody. In *United States v. Rasco*, 963 F.2d 132, 136 (6th Cir.), *cert. denied*, 506 U.S. 883 (1992), this circuit held that a sentencing court must consider as timely "an otherwise untimely conviction or sentence where the defendant serves the sentence imposed upon revocation of the parole within the time limits set forth in section 4A1.2(e)." It is unclear from the PSR, however, whether and to what extent, when Robertson committed a new crime when on parole, he was required to serve the remainder of his prior conviction's sentence before serving the new sentence. The defendant will have an opportunity to explore these issues on remand.

indictment or the date he first appears in court, whichever date last occurs." *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996), *cert. denied*, 520 U.S. 1170 (1997). We address this question before any sentencing issues because if the government did not comply with the Speedy Trial Act in prosecuting Robertson, the entire case, including any sentencing determinations made by the district court, must be dismissed.

On appeal, Robertson disputes only a small portion of the district court's speedy trial time calculation. More specifically, the defendant contends that the district court erred in stopping the speedy trial clock during the eight-day period soon before trial in which the government's motion for a continuance based upon the unavailability of one of its essential witnesses was pending. Under the district court's time calculation, resolving whether the speedy trial clock should be stopped while the government's continuance motion was pending was crucial to determining whether the Speedy Trial Act's seventy-day period was exceeded in this case. Nevertheless, we need not address this question because the district court erred in its determination of when the speedy trial clock should begin running in this case. Because we believe that the speedy trial clock should have been started significantly later than the district court determined, the question of stopping during the government's filing of a continuance motion is no longer outcome-determinative. Ultimately, we will affirm the district court's decision that the Speedy Trial Act was not violated in this case, though on grounds different from those presented by the government to the district court and on which the district court relied. *See United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997) (stating that "we may affirm on any grounds supported by the record, even though different from the grounds relied on by the district court.").

The district court determined that the seventy-day period given the government to bring Robertson to trial should begin running on November 5, 1997, the day Robertson was first indicted on the attempted bank robbery charge. We

recognize, however, that, pursuant to 18 U.S.C. § 3161(i), because the defendant withdrew his original guilty plea, he "shall be deemed indicted . . . on the day the order permitting withdrawal of the plea becomes final." *See also United States v. Marks*, 209 F.3d 577, 586 (6th Cir.), *cert. denied*, 121 S. Ct. 195 (2000) (holding that the day the defendant withdraws his guilty plea becomes the day of indictment for Speedy Trial Act purposes). Although there was no official district court order permitting Robertson to withdraw his guilty plea, viewing the record in the light most favorable to the defendant, we will treat October 2, 1998, the day the government and the district court were informed that the defendant wanted to withdraw his guilty plea and proceed to trial, as the day the district court's order permitting withdrawal of the plea became final, and thus the new day of indictment. Because the day of indictment cannot be counted toward the seventy-day time limit, *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988), we hold that the government's speedy trial clock started to run on October 3, 1998, almost eleven months later than the district court's designated starting date for the speedy trial clock.

Before engaging in a precise calculation of the government's compliance with the Speedy Trial Act, we must first address the various events that can stop the running of 18 U.S.C. § 3161(c)'s seventy-day time period. First, "[a] court should exclude all the days during which it is waiting to receive information necessary to decide a pending pre-trial motion. If the motion requires a hearing, the entire time from the filing of the motion through the date of the hearing is excludable." *Jenkins*, 92 F.3d at 438 (citing *Henderson v. United States*, 476 U.S. 321 (1986)). We have further held that, whether a pretrial motion requires a hearing or not, once the district court has in its possession all the information needed to decide a motion (including information and arguments heard at the hearing, if there is one), "a maximum of thirty days can be excluded on the theory that the court has taken the matter 'under advisement.'" *Jenkins*, 92 F.3d at 439 (quoting 18 U.S.C. § 3161(h)(1)(J)).

criminal history points. Thus, the district court's error with respect to the necessary timeliness of past convictions under § 4B1.1 effectively prevented the defense from challenging whether several of Robertson's past convictions were too stale to be considered as part of his criminal history for purposes of sentencing.

As the PSR attests, Robertson has committed numerous crimes throughout his adult life and has been in and out of prison on a regular basis for more than thirty years. Robertson's first felony conviction for a crime of violence occurred in 1966 when he was sentenced to forty-two months to five years' imprisonment for attempted robbery. Following this conviction, Robertson was convicted of escape from prison in 1969, 1971, and 1974, all felonies constituting crimes of violence.[5] *Harris*, 165 F.3d at 1068. Although all of these prior felonies constitute crimes of violence, for them to be considered under § 4A1.1, the general criminal history scoring provision, or § 4B1.1, the career offender provision, Robertson must have served time on these crimes within fifteen years of the date of the current offense, October 10, 1997. § 4A1.2(e)(1).

In determining that Robertson did serve time on these felonies within fifteen years of the current offense at issue, the probation officer relied on the Michigan Department of Corrections's records indicating when the sentences for Robertson's numerous prior offenses terminated. According to the Michigan records, despite the varying dates of conviction and the varying sentences imposed between 1966 and 1974, all of the sentences for all of these crimes

---

[5]The defendant's 1972 conviction for escape from prison cannot be counted toward either his general criminal history scoring or his career offender status. Section 4A1.2(e)(1)-(2) states that any sentence not exceeding one year and one month must be imposed within ten years of the defendant's committing the instant offense for it to be factored into a defendant's criminal history category. Because the 1972 escape sentence was only six months' custody, the probation officer erred in assigning Robertson two criminal history points for this escape.

THE COURT:  But not for purposes of—The career offender status is a statutory enhancement.  It is not—It is not—It is not commentary-guideline driven.  It's a statutory enhancement.

MR. AMBERG:  I understand.

THE COURT:  And the guidelines cannot trump—The guidelines cannot trump the statute.

MR. AMBERG:  He's not—He's being charged as a career offender under the interpretation of the guidelines by the probation department.  The government doesn't file a supplementation on him.

THE COURT:  My understanding is that for purposes of this sentence, he is a career offender, given his prior—the nature and extent of his prior convictions.

MR. AMBERG:  Well, my objection's on the record for the court.

J.A. at 166-67 (Sentencing Hr'g I).

From this discussion, it appears that the district court believed that Robertson's career offender status was statutorily mandated.  There is no career offender statute applicable to the defendant's charge of attempted bank robbery in violation of 18 U.S.C. § 2113(a), however.  Defense counsel was indeed correct in stating that Robertson was considered a career offender pursuant to the Guidelines' § 4B1.1, as opposed to any statutory sentence enhancement.

Nevertheless, the probation officer did not solely rely on § 4B1.1's career offender sentence enhancement in determining that a criminal history category of VI was appropriate; instead, independent of that provision, the probation officer calculated more than enough criminal history points for defendant to be sentenced under Category VI.  Questions concerning the timeliness of past convictions under § 4A1.2(e) are also relevant, however, when calculating

With these stopping rules in mind, and with October 3, 1998 as our starting date, we now proceed to a precise determination of whether the government's seventy-day time limit in which to bring Robertson to trial was exceeded in this case.  Because the timing of various events in the procedural history of this case at the district court level is so important in determining whether the Speedy Trial Act was satisfied, we will detail these events in the following procedural timeline:

October 8, 1998:  Defendant files motion for new counsel.

October 20, 1998:  Defendant files motion to adjourn trial.

November 4, 1998:  District court grants defendant's motion to adjourn trial.  Pursuant to district court's grant of defendant's motion to adjourn trial, the time between December 1, 1998, the original trial date, and April 6, 1999, the rescheduled trial date, is excluded from the seventy-day time period.

February 11, 1999:  Defendant files motion to suppress his confession.

March 31, 1999:  Defendant files motion to recuse the district court.

April 1, 1999:  Defendant seeks another adjournment of trial and asks that the court decide the recusal motion before deciding the suppression issue.  District court schedules recusal and suppression proceedings for April 29, 1999.

April 29, 1999:      District court denies recusal motion and takes suppression motion under advisement.

May 13, 1999:        Defendant files motion to dismiss for failure properly to waive indictment.

May 26, 1999:        District court denies suppression motion.

July 29, 1999:       Hearing held on defendant's motion to dismiss for failure properly to waive indictment.  District court denies the motion.

August 6, 1999:      Defendant files another motion to recuse the judge.

August 23, 1999:     District court denies recusal motion.

August 27, 1999:     Government files a motion for a continuance due to the unavailability of one of its essential witnesses.

September 3, 1999:   District court denies government's motion for a continuance.

September 7, 1999:   Defendant pleaded guilty on the first scheduled day for trial.

The speedy trial period began running on October 3, 1998. From October 3, 1998 to October 8, 1998, when the defendant filed a motion for new counsel, five of the seventy days given the government to bring Robertson to trial elapsed. The speedy trial period was stopped from October 8, 1998 through November 6, 1998, when, pursuant to § 3161(h)(1)(J), the thirty-day limit given the district court in which to review

constituting a "crime of violence" or a "controlled substance offense" within fifteen years of the date of the current offense, his attempted bank robbery, which occurred on October 10, 1997. *See United States v. Fletcher*, 15 F.3d 553, 555 n.1 (6th Cir. 1994).

In October 1998, at the hearing in which the district court rejected the initial plea agreement as providing an inadequate prison sentence to the defendant in light of his lengthy criminal history, defense counsel objected to his client's classification as a career offender because he believed that the probation officer had taken into account a stale felony conviction in reaching her determination. As is evidenced in the following colloquy between the district court and defense counsel, and in light of § 4B1.1's instructions that the fifteen-year limit in § 4A1.2(e)(1) applies to the counting of prior felonies constituting crimes of violence, it is clear that the district court erred in its interpretation of whether the timeliness of various past felonies is relevant under § 4B1.1:

THE COURT:  But the problem, Mr. Amberg, is that there is nothing in the law that I'm aware of that indicates that for purposes of determining career offender status, that the older convictions fall off.  The older convictions fall off only for the purposes of criminal scoring to determine the sentencing range.  There's nothing that indicates, either in the statutes or in the guidelines, that for purposes of determining career offender status, that the older convictions don't count.  To the contrary —

MR. AMBERG:  See, I don't agree with that because I'm looking at the Application Note to Section 4A1.1, Application Note 1.  And in the middle of it, it says certain prior sentences are not counted or are counted only under certain conditions.

THE COURT:  Counted towards scoring.

MR. AMBERG:  Yes.

### 3. Robertson's Sentence as a Career Offender

A defendant must meet the following three requirements to be sentenced as a career offender under U.S.S.G. § 4B1.1:

> [T]he defendant must have been at least 18 years old when he committed the offense for which he is to be sentenced, that offense must have been a felony constituting either a 'crime of violence' or a 'controlled substance offense,' and the defendant must have had at least two prior felony convictions falling in one or the other of those categories.

*United States v. Harris*, 165 F.3d 1062, 1067 (6th Cir. 1999). Robertson argues that the district court erred in sentencing him as a career offender because he did not have at least two prior felony convictions that would meet the requirements of § 4B1.1. More specifically, Robertson claims that, while he did have one prior felony conviction constituting a "crime of violence" that would qualify under § 4B1.1 (*i.e.*, a 1988 bank robbery conviction), all of the other felonies constituting crimes of violence that he had committed were too old to be considered under the career offender provision.

The application notes to § 4B1.1 state that, for purposes of counting prior felony convictions that can be used toward career offender classification, the provisions of § 4A1.2 are applicable. U.S.S.G. §§ 4B1.1, cmt. n.1, 4B1.2, cmt. n.3. Section 4A1.2(e)(1) states:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

§ 4A1.2(e)(1). Therefore, to be considered a career offender under § 4B1.1, Robertson must have been convicted of, or have been imprisoned on, at least one additional felony

defendant's motion for new counsel expired.[1] The speedy trial clock began running again the following day, and continued to run until December 1, 1998, with an additional twenty-four days elapsing, twenty-nine days total. Pursuant to the district court's order granting Robertson's motion to adjourn trial, all time between December 1, the original trial date, and April 6, 1999, the rescheduled trial date, is excluded from the seventy-day time period.[2]

On March 31, 1999, one week before the speedy trial clock was set to begin running again, Robertson filed a motion to recuse the district judge. The district court then scheduled a hearing for April 29, 1999, in which arguments could be heard on both Robertson's motion to recuse the district judge and his motion to suppress his confession, filed in February 1999. Thus, pursuant to § 3161(h)(1)(F), all time between March 31, 1999 and the April 29, 1999 hearing was tolled.

On April 29, 1999, the district court, following the defendant's argument, denied defendant's recusal motion. The court took the suppression motion under advisement following the suppression hearing, heard on the same day. Because the district court then had all the information from the parties that it needed to decide the suppression motion, § 3161(h)(1)(J) now becomes the relevant tolling provision. Pursuant to § 3161(h)(1)(J), the speedy trial clock is stopped for that time in which the suppression motion was under advisement, not to exceed thirty days. Thus, the speedy trial clock was stopped from April 30, 1999 until May 26, 1999,

---

[1] There is no indication in the record that the district court did not possess all the requisite information to decide this motion, nor does it appear that a hearing was necessary.

[2] By starting the tolling period on December 1, 1998, as opposed to October 20, 1998, the day Robertson filed the motion to adjourn trial, the district court placed the defendant in the same position vis-á-vis the Speedy Trial Act that he would have been in had the trial not been delayed. Thus, insofar as the Speedy Trial Act is concerned, defendant is neither penalized nor rewarded for seeking a continuance of trial.

when the district court denied defendant's suppression motion.

Although the district court decided Robertson's suppression motion on May 26, 1999, the speedy trial period did not begin to run the following day. This is because, while the suppression motion was under advisement, Robertson, on May 13, 1999, filed a motion to dismiss the case for failure properly to waive indictment. A hearing was scheduled for July 29, 1999 to address this motion, and during the hearing the court ruled from the bench that the motion to dismiss was denied. Pursuant to § 3161(h)(1)(F), all time between the filing of the motion to dismiss and the district court's hearing on the motion is excluded from the seventy-day speedy trial period.

To summarize, as of July 29, 1999, twenty-nine of the seventy days given the government to bring Robertson to trial had elapsed. On July 30, 1999, with no other pretrial motions pending, the speedy trial clock began to run again. Seven more days of the seventy-day time period elapsed (thirty-six days total) until August 6, 1999, when the defendant filed yet another motion to recuse the district judge. The speedy trial period was then stopped through August 23, 1999, when the district court again denied defendant's recusal motion. § 3161(h)(1)(F), (J). The speedy trial clock began to run again on August 24, 1999.

From August 24, 1999 until September 7, 1999, fourteen additional days elapsed (fifty days total) from the seventy-day time period. It was on September 7, 1999 that Robertson pleaded guilty to attempted bank robbery and the speedy trial clock stopped for the final time.

After conducting this analysis, we agree with the government that, even had the district court not tolled the period between August 27, 1999 and September 3, 1999 during which the government's motion for a continuance was pending, the seventy-day period would not have been exceeded in this case. As it turns out, even without the benefit of stopping the speedy trial clock during the filing of

the suppression hearing, recanted his original confession or cast doubt on its accuracy. We believe that the best course of action is to remand this matter to the district court, the finder of fact, so that it can decide whether Robertson recanted or otherwise questioned the accuracy of his confession in the course of the suppression proceedings. We do note, however, that simply because the defendant stated in his testimony at the suppression hearing that he had been under the influence of crack cocaine when he originally confessed to the crime while in the FBI's custody would not necessarily be an effort on Robertson's part to recant or cast suspicion on his initial confession. It is possible that his testimony at the suppression hearing could be consistent with his FBI confession. As the district court noted in its opinion denying Robertson's motion to suppress his confession, Robertson, in his written confession to the FBI, "state[d] that he had been 'using crack cocaine for the past 30 days,' and that 'this crack cocaine had me crazy with no sleep for the past 4 days.'" J.A. at 94 n.5 (Dist. Ct. Op. Den. Mot. to Suppress) (quoting Robertson's written confession).[4] We leave this for the district judge to decide on remand.

In light of our explication of the law of offense level reductions for "super acceptance" of responsibility pursuant to U.S.S.G. § 3E1.1(b), we vacate Robertson's sentence and remand to the district court for resentencing consistent with this opinion.

---

[4]Further evidence of the consistency between Robertson's suppression hearing testimony and his initial confession can be found in an affidavit given by the FBI agent who took Robertson's confession, in which the agent notes that the defendant, in his confession, "further stated that he is a 'crack' cocaine addict, and attempted to rob the bank because he needed the money to support his drug habit." J.A. at 14-15 (Agent Townley Aff.). We note, however, that neither a transcript of Robertson's verbal confession nor his written confession were provided to us in the Joint Appendix or indeed in the record filed with this court.

additional . . . point in making his plea." J.A. at 345 (Sentencing Hr'g II). It is important to note, however, that, under the language of § 3E1.1(b), a defendant's attempt to suppress a full and timely confession will not necessarily preclude him from an additional offense level reduction under § 3E1.1(b). *United States v. Stoops*, 25 F.3d 820, 823 (9th Cir. 1994).

In this case, Robertson moved to suppress his confession on the grounds that his Fifth Amendment right to consult with an attorney was violated. The mere filing of a suppression motion, however, does not negate the fact that a defendant has timely provided the government with complete information regarding his involvement in the offense.[3] Rather, the additional one-point reduction for acceptance of responsibility may only be precluded if the defendant recants or casts doubt on the accuracy of his original timely confession during the course of the suppression proceedings, for under these circumstances the defendant will no longer have provided the government with "complete information" concerning his involvement in the offense. § 3E1.1(b)(1). *See United States v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999) (explaining that, when a defendant recants his original timely confession, it is not error for the district court to hold that the defendant is not entitled to an additional one-point offense level reduction under § 3E1.1(b)(1)); *United States v. Francis*, 39 F.3d 803, 809 (7th Cir. 1994) (holding that a defendant's retraction of portions of his statement regarding the involvement of various co-conspirators precluded him from receiving the additional offense level reduction).

The question here, then, is whether Robertson, in the course of arguing that his confession should be suppressed, be it in motions or briefs filed with the court or in testimony given at

---

[3]Nor does Robertson's decision to withdraw his guilty plea and proceed to trial bear on the issue whether he provided the government with a complete and timely confession concerning his involvement in the attempted bank robbery. *United States v. Corona-Garcia*, 210 F.3d 973, 980-81 (9th Cir.), *cert. denied*, 121 S. Ct. 231 (2000).

its continuance motion, the government brought Robertson to trial with twenty days to spare under § 3161(c). Thus, we need not address whether it is appropriate to stop the time during which the government's ultimately unsuccessful continuance motion was pending in the district court. Instead, because the speedy trial clock started anew when Robertson withdrew his original guilty plea, the government has safely satisfied its duty of bringing Robertson to trial within the seventy-day period allocated by the Speedy Trial Act.

Accordingly, we **AFFIRM** the district court's holding that the Speedy Trial Act was not violated in this case, though on different grounds from those on which the district court relied. We now proceed to Robertson's appeal of his sentence.

### B. Sentencing Issues

#### 1. Standard of Review

The district court's factual findings for purposes of sentencing under the Guidelines are reviewed by this court for clear error. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). Issues involving the interpretation of Guidelines provisions, however, are legal questions which this court reviews de novo. *Id*.

#### 2. Acceptance of Responsibility

Section 3E1.1(b) of the Sentencing Guidelines provides for an additional one-point reduction in offense level if a defendant can meet three requirements: first, the defendant must qualify for the two-point reduction in offense level for accepting responsibility pursuant to § 3E1.1(a); second, the defendant's offense level prior to the initial two-level reduction pursuant to § 3E1.1(a) must be greater than sixteen; and third, the defendant must *either* timely provide the government with "complete information" concerning his involvement in the offense *or* timely notify the authorities of an intent to plead guilty so that the government can

avoid allocating resources toward preparing for trial. U.S.S.G. § 3E1.1(b).

As noted earlier, pursuant to the conditional plea agreement between Robertson and the government, Robertson was given the two-level reduction for acceptance of responsibility under § 3E1.1(a). Furthermore, Robertson's offense level prior to that two-point reduction was greater than sixteen. Robertson does not dispute that, because he pleaded guilty on the day of trial, he did not timely notify the government of his intention to plead guilty. Thus, whether Robertson is entitled to an additional one-point reduction in offense level hinges upon whether he "timely provid[ed] complete information to the government concerning his own involvement in the offense" pursuant to § 3E1.1(b)(1).

At the sentencing hearing, the district court stated the following in holding that Robertson was not entitled to an additional point reduction in offense level for acceptance of responsibility:

> I don't believe Mr. Robertson qualifies for the additional point here for super acceptance. Mr. Robertson, as is his right, contested every issue that was possible to contest and he did not demonstrate the kind of super acceptance in a timely manner that qualifies for the additional . . . point in making his plea. He may have confessed at the time he was apprehended, but that was not done in conjunction with the plea, so I'm going to deny the additional point.

J.A. at 345-46 (Sentencing Hr'g II). These are the only comments the court made regarding the defendant's eligibility for the additional one-point offense level reduction.

We believe that the district court misinterpreted the language of § 3E1.1(b) in refusing Robertson's request for an additional one-point offense level reduction for acceptance of responsibility. The language of § 3E1.1(b) is quite clear in stating that, once the first two requirements for "super acceptance" have been met, the offense level should be

reduced by one additional level if the defendant "timely provid[es] complete information to the government concerning his own involvement in the offense; *or*" the defendant "timely notif[ies] authorities of his intention to enter a plea of guilty[.]" § 3E1.1(b)(1)-(2) (emphasis added). Thus, given the disjunctive language of the third requirement, so long as one of the two options has been satisfied, the additional one-point reduction should be given. *See United States v. Lancaster*, 112 F.3d 156, 158 (4th Cir. 1997) (citing *United States v. Eyler*, 67 F.3d 1386, 1391 (9th Cir. 1995)). Furthermore, as soon as the defendant proves by a preponderance of the evidence that either of the two steps for "super acceptance" has been taken, the district court must give the additional offense level reduction; the language is mandatory, not permissive. *See id*; *United States v. Townsend*, 73 F.3d 747, 755-56 (7th Cir. 1996); *United States v. Talladino*, 38 F.3d 1255, 1263-64 (1st Cir. 1994).

Here, the district court acknowledged that the defendant confessed at the time he was apprehended. Nevertheless, the court stated that, because this confession was not made in conjunction with his plea, the additional one-point offense level reduction should not be granted. Whether a timely confession was made in conjunction with a timely plea agreement is irrelevant. Instead, so long as Robertson's confession was timely and provided the government with complete information concerning his own involvement in the offense, the additional one-point offense level reduction is required.

From the district court's colloquy with defense counsel during the sentencing hearing, it appears that the court's decision to deny Robertson an additional one-point offense level reduction was also influenced by Robertson's efforts to suppress his confession following the district court's refusal to accept the first plea agreement reached between the government and Robertson. The court stated that the defendant, "as is his right, contested every issue that was possible to contest and he did not demonstrate the kind of super acceptance in a timely manner that qualifies for the